COURT OF APPEALS
DECISION
DATED AND FILED

January 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP196-CR**

Cir. Ct. No. **2017CF1206**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOHN L. MOORE,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Brown County: JOHN ZAKOWSKI, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   John Moore appeals a judgment of conviction for armed robbery, in violation of WIS. STAT. § 943.32(2) (2019-20),[1] entered after a bench trial, and an order denying his motion for postconviction relief.   Moore argues that the circuit court erred by denying his postconviction motion to vacate his conviction and sentence and to order a jury trial because Moore did not knowingly, intelligently and voluntarily waive his right to a jury trial.   We conclude that although the court's jury trial wavier colloquy was deficient, the State proved by clear, satisfactory and convincing evidence that Moore's waiver of his right to a jury trial was knowingly, intelligently and voluntarily made.   We therefore affirm.

## BACKGROUND

¶2     At a pretrial status hearing, Moore's counsel, Raj Singh, told the circuit court that after discussing the "pros and cons" of Moore's "constitutional right to a jury trial or requesting a bench trial," Moore requested to have a bench trial.   Singh stated that Moore's jury trial waiver was made "voluntarily and on an informed basis" for "strategic reasons," so that Moore could "utilize the judge as the trier of fact instead of a 12-person jury."

¶3     During the circuit court's colloquy with Moore, the court asked if Moore knew what a jury trial was.   Moore responded, "Yes, sir."   After the court explained the differences between a bench trial and a jury trial, Moore stated that he wanted to have a bench trial.   The court accepted Moore's jury trial waiver,

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

concluding that his decision to do so was freely, intelligently and voluntarily made.

¶4    Following his conviction, Moore filed a motion for postconviction relief, requesting that the circuit court vacate his conviction and order a jury trial. Moore alleged that his jury trial waiver "was defective because he was not advised by the trial court of the unanimity requirement for jury trial verdicts." The court held an evidentiary hearing on Moore's motion.

¶5    Attorney Singh and Moore testified at the evidentiary hearing. Singh could not recall the circumstances of Moore's jury trial waiver from four years prior and did not recall any of his consultations with Moore. He nevertheless testified as to his customary discussions with a client regarding the right to a jury trial and its waiver. He testified that during such discussions, he would take care to explain to the client that the waiver of a jury trial was "100 percent" the client's decision, not the trial attorney's decision. He would explain to the client that he or she has a constitutional right to a jury trial. Singh would also explain to the client that he or she has an absolute right to request a bench trial and waive a jury trial. Singh would further explain that the State also has a right to demand a jury trial, and that the circuit court can deny a request for a bench trial for any reason or for no reason at all. Singh would also explain that the jurors would weigh the credibility of the evidence in a jury trial, whereas a judge would weigh the credibility of the evidence in a bench trial.

¶6    Singh testified that as a regular part of his practice, he always had "a very detailed discussion with [his] client about waiving a right to a jury trial," during which he discussed with the client the requirement of the "unanimity of a jury verdict." Since Singh began his practice, he had been aware of the

requirement of a unanimous jury verdict; it was "not something new," and Singh had "always" and "very carefully" gone "over the idea of unanimity," often within "the context of the Plea Questionnaire/Waiver of Rights form because that's one of the elements on there …." Singh testified "[w]ithout a doubt," he routinely told his clients that the jury's function was to deliberate "to see if there's proof beyond a reasonable doubt," and "[i]n general" he talked about the requirement of a "unanimous agreement of the jury."

¶7 Further, Singh said he would tell the client what to expect during the colloquy with the circuit court judge regarding the waiver of a jury trial. He would tell the client that he expected the judge to ask the client if he or she had enough time discuss his or her decision with counsel. He would also advise that the judge would likely inquire into whether any promises were made to the client to induce the client to waive his or her right to a jury trial. Similarly, he would advise the client that he expected the judge to ask the client if he or she received any threats or pressure from anyone seeking to induce a waiver. Singh would also stress the need to be honest and accurate with the judge.

¶8 If a client were African-American, as Moore was, Singh testified that he would also ordinarily inform the client that there was "an extremely high probability that a jury would be what we would call an all-white jury." Singh would further tell clients that "sociologists tell us that the more educated a person is the less likely they are to be racially biased." Singh would also observe the judge will have a "baccalaureate degree and a juris doctorate," whereas a jury is likely to range from highly educated to high school dropouts.

¶9 Singh also testified regarding another case he handled around the same time as Moore's case. That particular case also involved a jury waiver, and

Singh specifically remembered informing that client, Paul B. Jones,[2] that "in a jury trial any decision would have to be unanimous for the judge to accept the verdict." Because Singh recalled that he advised Jones of the jury unanimity requirement, Singh testified that he would have also explained the requirement to Moore because he is "ritualistic." Singh further testified that he could not "imagine in any given span of time that there would have been any changes from client to client" as to what was discussed during Singh's common "presentation" before a client decided whether to waive a jury.

¶10 Moore, conversely, testified that Singh did not discuss the jury unanimity requirement with him and that he did not understand that all twelve jurors had to agree in order to find him guilty. Moore did recall discussing with Singh the possibility of there being potential racial bias in a Brown County jury.

¶11 Moore admitted to having a number of prior convictions. The State indicated that it could "confirm 23 prior convictions," all of which were plea-agreement cases. Moore testified that he had counsel in his previous cases, but that he did not recall any of those attorneys explaining the unanimity requirement. Moore further explained that he had an eighth grade education, that he had been diagnosed with bipolar disorder and schizophrenia, and that he had been prescribed medication for those conditions, but that he did not receive that medication while in jail prior to his waiver hearing. Moore also testified that Singh did not discuss anything with him about "the role of a jury" or "the difference between the jury and bench" trial, and that he "didn't really understand anything" that Singh told him.

---

[2] *State v. Paul B. Jones*, Brown County case No. 2016CF1681.

¶12    The circuit court agreed with Moore's assertion that its jury trial waiver colloquy was deficient because the court failed to inquire if Moore understood the unanimity requirement for a jury trial. The court nonetheless denied Moore's motion for a new trial. The court relied on *State v. Lopez*, 2010 WI App 153, ¶12, 330 Wis. 2d 487, 792 N.W.2d 199, where we stated that although a defendant's criminal history is not dispositive, "it is appropriate to infer some understanding [of the defendant's rights] based on prior experience" with the criminal justice system. The court noted that Moore had multiple prior convictions, and it wrote:

> The court is unaware of how many specific plea hearings this defendant has participated in, but it is more than a reasonable inference that he has entered pleas on at least multiple occasions where he was informed of his constitutional rights. One such right is the right to a jury trial where all twelve people would have to agree that the State met its burden beyond a reasonable doubt per the CR-227 plea questionnaire.

¶13    Furthermore, the circuit court noted that Singh had testified that he informed his client in the *Jones* case of the unanimity requirement. The court also noted that Singh's consultation with Jones predated his discussion with Moore about his waiver of his right to a jury trial. With this context in mind, the court explained: "A logical extrapolation of Attorney Singh's testimony would be [that] he did inform Moore of the unanimous jury requirement." The court concluded:

> The court acknowledges that standing alone neither his criminal history [nor] the vague testimony of Attorney Singh would be sufficient for a finding that the waiver of his jury trial was proper. However, "when combined" as in *Lopez* (p. 494 ¶12) the testimony of Attorney Singh and the defendant's familiarity with the criminal justice system leads the court to find that the State has met its burden by clear and convincing evidence that the defendant's waiver of his jury trial was knowingly, intelligently and voluntarily made.

Moore now appeals.

## DISCUSSION

¶14    On review, we accept the circuit court's factual findings unless they are clearly erroneous. *State v. Miller*, 2012 WI 61, ¶26, 341 Wis. 2d 307, 815 N.W.2d 349. We determine de novo whether those facts demonstrate that Moore knowingly, intelligently and voluntarily waived his right to a jury trial. *See State v. Anderson*, 2002 WI 7, ¶12, 249 Wis. 2d 586, 638 N.W.2d 301.

¶15    Where a circuit court fails to conduct an adequate colloquy with a defendant regarding the waiver of his or her right to a jury trial, the court must hold an evidentiary hearing on whether the defendant's waiver was knowing, intelligent and voluntary. *Id.*, ¶25. The presumption is that a defendant did not waive his or her right to a jury trial; however, the State may overcome this presumption by proving, by clear and convincing evidence, that the waiver was in fact knowing, intelligent and voluntary. *Id.*, ¶26. If the State cannot meet this burden, then the defendant is entitled to a new trial. *Id.*

¶16    The State acknowledges that the circuit court's colloquy was deficient because the court did not explicitly discuss the jury unanimity requirement with Moore. The issue for our review, therefore, is whether the State proved by clear and convincing evidence that Moore nevertheless freely, voluntarily and intelligently waived his right to a jury trial despite the defective colloquy.

¶17    Moore argues that the combined bases for the circuit court's denial of his motion—i.e., his prior criminal conviction history and Singh's testimony about what he told the defendant in the *Jones* case concerning the unanimity

7

requirement—do not constitute clear and convincing evidence that his jury trial waiver was proper. In response, the State contends, and we agree, that the court's decision denying a new trial was based on its findings of fact, primarily its credibility findings, which we must uphold unless they are clearly erroneous. *See Miller*, 341 Wis. 2d 307, ¶26. Based on these factual findings, the court concluded that Moore understood the "purpose and function" of the jury, that his guilt or innocence would be "determined by a single judge rather than by a group of twelve lay persons," and that all jury members had to agree on the verdict. *See State v. Resio*, 148 Wis. 2d 687, 695-96, 436 N.W.2d 603 (1989) (stating that "[w]hen a defendant waives the right to a jury trial understanding that his or her guilt or innocence will be determined by a single judge rather than by a group of twelve lay persons, that waiver is valid and effective").

¶18 As to the circuit court's consideration of Moore's prior criminal history, Moore contends that the presentence investigation report provided the only evidence in the record regarding his significant criminal history. Moore asserts that what he may have understood at the time of his pleas in his prior cases does not accurately reflect what he recalled and understood about the jury unanimity requirement on the date of his jury trial waiver in the present case. Moore notes that the State did not put into evidence a copy of a plea questionnaire in this case or in any other case in which he had entered a plea, and he asserts that there was no testimony that anyone had ever explained the unanimity requirement to him in at least one of his prior cases. Moore further claims that his educational limitations, coupled with his mental illness diagnoses, further support doubt regarding his knowledge. Moore therefore argues that the court's inference that he understood the unanimity requirement on the date of his jury trial waiver was based solely upon "conjecture."

¶19    Moore further argues that

> [g]iven the length of time since Moore's previous plea, his personal characteristics, and the lack of evidence showing that Moore was in fact explained the unanimity requirement in any of his prior cases, Moore's criminal record was a very slender reed upon which to impute on Moore knowledge of the unanimity requirement.

He asserts that given the lack of evidence of his knowledge of the unanimity requirement, the only inference that could logically be drawn is the adverse inference—i.e., that he did not understand that requirement on the date of his waiver in this case.

¶20    We conclude that the circuit court properly considered Moore's "extensive criminal history," and it made a "reasonable inference" that Moore had entered multiple pleas "where he was informed of his constitutional rights," including "the right to a jury trial where all twelve people would have to agree that the State met its burden beyond a reasonable doubt per the CR-227 plea questionnaire."    The court's consideration of Moore's criminal history is supported by *Lopez*, which held that while "not dispositive," a defendant's familiarity with the court system made it "appropriate" for the court "to infer some understanding" of the defendant's knowledge of his constitutional rights, including the right to a unanimous jury verdict.  *Lopez*, 330 Wis. 2d 487, ¶12.

¶21    Moore next asserts that Singh's testimony about his consultation with Moore and his discussion about the unanimity requirement was vague. According to Moore, Singh could not definitively state that it was his routine practice to discuss the unanimity requirement with defendants at the time he represented Moore.  While Singh testified that, in the *Jones* case, he told Jones any decision of a jury would have to be unanimous for the judge to accept the

verdict, Moore argues Singh could not testify to the same in Moore's case, nor could Singh say that it was his ordinary practice to do so at the time. Additionally, Moore contends Singh's recollection regarding the *Jones* case was also weak.

¶22   Moore further asserts that while routine practice or habit evidence alone "can be insufficient as a matter of law," here we do not even have evidence of a routine practice. Instead, Moore contends that "we have a weak recollection of a single instance in which Attorney Singh believes he discussed the unanimity requirement …." Moore further contends that the confluence of Singh's statements to Moore about facing an "all-white jury," coupled with his failure to discuss the unanimity requirement, interfered with Moore's ability to make an informed decision.

¶23   As the State correctly argues, Moore cherry picks Singh's testimony to argue that Singh "could not truthfully testify that it was his routine practice to explain the unanimity requirement to clients waiving jury trials." The record is replete with Singh's testimony that he routinely and thoroughly advised clients in a "painfully detailed" manner about all of the rights that they would give up by waiving a jury trial, including jury unanimity. In light of this routine, Singh testified he was "absolutely certain" that he had counseled Moore on his rights before waiving a jury trial. Although Singh did not have a clear memory of his specifically informing Moore that a jury's verdict would have to be unanimous, Singh succinctly testified about his routine practice of informing his clients regarding the jury unanimity requirement.

¶24   Moore's argument is further misplaced because he ignores the fact that the circuit court found Singh's testimony regarding his routine practice of discussing the jury unanimity requirement—as part of his in-depth discussion with

clients before the jury waiver hearing—more credible than Moore's claiming that he had no such discussion with Singh.  Again, we defer to the court's credibility findings.  *See Miller*, 341 Wis. 2d 307, ¶26.  The court found it significant that Moore recalled part of Singh's ritual—that being the discussion regarding the impact of race.  This recollection told the court that Moore and Singh engaged in a discussion similar to the ritual to which Singh testified.  The court was satisfied that the discussion between Singh and Moore included topics beyond the likelihood of the impact of race.  The combination of Moore's experience with the criminal justice system—during which he had "been exposed to numerous plea questionnaires and plea colloquies"—with Singh's routine practice of extensively counseling his clients about jury trial waivers undermined Moore's claims that Singh did not discuss unanimity with him and that Moore did not know that a jury's verdict had to be unanimous.

¶25    We therefore conclude that there is sufficient evidence to support the circuit court's finding that Moore's waiver of his jury trial was knowingly, intelligently and voluntarily made despite the defect in the court's colloquy.  The court properly inferred Moore's understanding of the unanimity requirement based on Moore's extensive criminal history, combined with the court's credibility determinations related to Singh's and Moore's testimony.  The court's findings of fact were not clearly erroneous, and the court properly applied those facts to conclude that the State had shown that Moore's jury trial waiver was knowing, voluntary and intelligent.  Accordingly, we affirm.

11

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.